IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:19-CV-236-FL

| | | |
|---|---|---|
| STEPHEN R. BOURNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SUSAN MCNEALY-MINOR, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative to transfer venue pursuant to 28 U.S.C. § 1404(a). (DE 7). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, defendant's motion is denied.

**STATEMENT OF THE CASE**

Plaintiff commenced this action in Brunswick County Superior Court on October 24, 2019, seeking declaratory judgment that he is not indebted, obligated, or liable to defendant. Defendant was served defendant's complaint on or about November 4, 2019, and removed the case to this court on December 3, 2019, invoking the court's diversity jurisdiction. On December 10, 2019, defendant filed the instant motion.

**STATEMENT OF THE FACTS**

The facts alleged in the complaint may be summarized as follows. Beginning in January 2011, the parties were engaged in a romantic and sexual relationship. (Compl. (DE 1-1) ¶ 9). At various times during the early years of their relationship, the parties cohabited intermittently in California, first in a home the defendant and her brother owned ("#8 Blue Oaks"), then in a home plaintiff rented, then in the lower level of defendant's mother's home. (Id. ¶ 10). Plaintiff contributed significantly to improving the lower level so that defendant could live there and provided maintenance services for defendant and her mother. (Id.). During the periods they cohabited, plaintiff paid for food, travel, and other household expenses, except to the extent defendant paid for her automobile, her health care, and her daughter's expenses. (Id. ¶¶ 12, 13).

Although the parties had no express agreement that she do so, defendant chose to leave her work as a merchandiser, for which she had been paid a modest wage. (Id. ¶ 14). Plaintiff alleges that defendant's reasons for leaving her job included, without limitation, the sale of #8 Blue Oaks, which left defendant in a financial position which did not require her to work and her desire to travel with plaintiff and spend more time in North Carolina. (Id.).

In June of 2013, during the relationship with defendant, plaintiff acquired real property situated in Brunswick County, North Carolina. (Id. ¶¶ 15, 16). Plaintiff became a full-time resident of Brunswick County, North Carolina in August 2015. (Id. ¶ 18). Although defendant remained a California resident, she made trips to North Carolina with plaintiff prior to his acquisition of the real property and regular trips to visit plaintiff following his relocation. (Id. ¶ 19). Plaintiff paid to move various items of defendant's personal property to plaintiff's North Carolina residence at defendant's request, but defendant continued to reside in California, where defendant was the primary caretaker for her mother. (Id. ¶ 20).

Sensing that defendant attached importance to getting married, plaintiff proposed to defendant in December 2015 and defendant accepted. (Id. ¶ 21). In July 2016, defendant communicated to plaintiff that she could not make Southport her home and that plaintiff could walk away from the relationship. (Id. ¶ 22). Still, the parties continued to maintain a long-distance relationship. (Id. ¶ 23). Over the Thanksgiving holiday in 2018, at a family gathering, defendant had one of a number of emotional outbursts in which she made various statements from which plaintiff inferred that she was unhappy in the relationship. (Id. ¶ 24). By February 2019, defendant recommended that the parties end their relationship and plaintiff agreed. (Id. ¶ 25).

In March 2019, plaintiff was notified that defendant intended to commence litigation against plaintiff unless plaintiff agreed to mediate disputes with defendant. (Id. ¶ 29). Plaintiff did not respond to this request. (Id.). On October 7, 2019, defendant sent plaintiff a demand letter, asserting that in a couples' therapy session several years ago, plaintiff agreed to compensate defendant "for her contributions to the relationship in the amount of $100,000 to $120,000 per year of the relationship as a fair representation of the value of her services." (Id. ¶¶ 30, 31, 34). Defendant contends that

> [b]ased on both express and implied agreements, [defendant] contributed significantly to the relationship in the form of managing [the parties'] personal lives together, cooking, cleaning, shopping, playing social hostess to friends and family~ making and managing travel plans, traveling with [plaintiff] for business, house hunting in North Carolina and finding a 4400 square foot home, furnishing the home, and entertaining [plaintiff's] family in the home. [Plaintiff] purchased a boat slip and a buildable lot in St. James Plantation to enable [the parties] to use the resort community amenities along with the boat [defendant] was instrumental in finding.

(Id. ¶ 31). Defendant demands compensation for these contributions. (See id. ¶ 34). Plaintiff denies that he ever made any agreement to compensate plaintiff for such services. (Id. ¶¶ 11, 32, 34). Additional facts pertinent to the instant motion will be discussed below.

3

## COURT'S DISCUSSION

A.   Personal Jurisdiction

    1.   Standard of Review

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a claim for lack of personal jurisdiction. "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). At this stage, the court "must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir.1993)( "[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

    2.   Analysis

"A lawful assertion of personal jurisdiction over a defendant requires satisfying the standards of the forum state's long-arm statute and respecting the safeguards enshrined in the Fourteenth Amendment's Due Process Clause." Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012). Where, as here, "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause, . . . the dual jurisdictional requirements collapse into a single inquiry" into whether personal jurisdiction comports with due process. Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

"[D]ue process requires only that [defendant] have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945). The due process inquiry "can be undertaken through two different approaches – by finding specific jurisdiction . . . or by finding general jurisdiction." ALS Scan, Inc. v. Digital Serv. Consul., Inc., 293 F.3d 707, 711 (4th Cir. 2002). Plaintiff asserts that defendant is subject to both the general jurisdiction and specific jurisdiction.

      a.     General Jurisdiction

"When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 n.14 (1984). To invoke general jurisdiction, a defendant's contacts with the forum must be "so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Id. at 924. "[T]he general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts," but instead "calls for an appraisal of [defendant's] activities in their entirety." BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1559 (2017) (citing Daimler AG v. Bauman, 571 U.S. 117, 139 n.20 (2014)).

Appraising defendant's activities in their entirety, the court cannot say that her contacts rendered her essentially at home in the forum state. While defendant spent a considerable amount of time in North Carolina, (see McNealy Decl. (DE 7-1) ¶ 10; Bourne Aff. (DE 13) ¶ 8; McNealy Decl. (DE 14-1) ¶ 10), she has at all times relevant to this litigation been a citizen of California,

5

and she has never sought to change her domicile to North Carolina. (See Compl. (DE 1-1) ¶¶ 2, 10, 20; McNealy Decl. (DE 7-1) ¶¶ 2, 3, 5, 11; McNealy Decl. (DE 14-1) ¶¶ 9, 10). Thus, general jurisdiction does not lie in this case.

      b.      Specific Jurisdiction

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283–84 (2014) (quotations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Id. at 284. "To decide whether specific jurisdiction exists, we examine (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004) (quotations omitted); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–76 (1985).

The touchstone of the purposeful availment inquiry is whether "the defendant's conduct and connection with the forum State are such that [s]he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "The purposeful-availment test is flexible, and our analysis proceeds on a case-by-case basis." Tire Eng'g & Distribution, 682 F.3d at 302. "We have found purposeful availment where a defendant substantially collaborated with a forum resident and that joint enterprise constituted an integral element of the dispute." Id. (citing CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 294–95 (4th Cir. 2009)).

Defendant testifies that, "because [plaintiff] contemplated using his new vacation home in North Carolina and wanted [defendant] to accompany him on his trips," the parties agreed that plaintiff would compensate defendant $110,000.00 per year for domestic work, including "managing travel plans, cooking, cleaning, purchasing furniture, and playing social hostess to friends and family." (McNealy Decl. (DE 7-1) ¶¶ 8, 9). It is undisputed that defendant cohabitated with plaintiff in North Carolina at least 71 days in 2014, 47 days in 2015, 119 days in 2016, 200 days in 2017, and 192 days in 2018. (McNealy Decl. (DE 7-1) ¶ 10; Bourne Aff. (DE 13) ¶ 8; McNealy Decl. (DE 14-1) ¶ 10). In July 2016, defendant "agreed that [she] would spend more time in North Carolina with [plaintiff] while [her] daughter was away for law school." (McNealy Decl. (DE 7-1) ¶ 11). Defendant testifies that the friends she had in North Carolina "were mutual friends of [plaintiff] and I, as a couple, all of whom were husbands and wives we socialized with." (McNealy Decl. (DE 14-1) ¶ 13). On these facts, defendant's performance of her alleged agreement with plaintiff in North Carolina should have given her reason to anticipate being haled into court in North Carolina.

Defendant argues that she did not purposefully avail herself of the privileges of conducting business in North Carolina, citing the multifactor test for purposeful availment articulated in <u>Consulting Engineers Corp. v. Geometric Ltd.</u>, 561 F.3d 273, 278 (4th Cir. 2009). Defendant argues that she did not maintain offices in North Carolina, own property in the state, reach out to North Carolina to solicit or initiate business, or agree that North Carolina law could govern any disputes. (Def. Mem. (DE 8) at 7; McNealy Decl. (DE 7-1) ¶ 6). However, the facts above demonstrate that defendant deliberately engaged in significant or long-term business activities in North Carolina from 2014–18, made in-person contact with plaintiff in North Carolina regarding carrying out the alleged agreement, was in close communication with plaintiff by virtue of

7

defendant's extended stays in North Carolina, and performed a large portion of the alleged contract in North Carolina. See Consulting Eng'rs, 561 F.3d at 278. Thus, defendant's argument is unpersuasive.

Defendant also argues that her contacts with North Carolina are based on the "unilateral" decision by plaintiff to move to North Carolina. (Def. Resp. (DE 8) at 8). However, defendant also testifies that she "agreed that [she] would spend more time in North Carolina with [plaintiff] while [her] daughter was away for law school." (McNealy Decl. (DE 7-1) ¶ 11). Plaintiff's own testimony indicates her assent to carrying out the terms of the purported contract in North Carolina. See Tire Eng'g & Distribution, 682 F.3d at 302 (citing Nolan, 259 F.3d at 216) ("Where such minimum contacts are present, that the defendant did not initiate the contacts does not bar a judicial finding of purposeful availment."). Accordingly, defendant purposefully availed herself of the privilege of conducting activities in the state of North Carolina.

Turning to the second prong of the specific jurisdiction analysis, a plaintiff's claims arise out of defendant's contacts with the forum if "the defendant's contacts with the forum state form the basis of the suit." Consulting Eng'rs, 561 F.3d at 278–79; see also CFA Inst., 551 F.3d at 295 (holding the second prong of the specific jurisdiction inquiry met where contacts are "the genesis of this dispute"). Defendant's demand letter seeking compensation from plaintiff expressly discusses "house hunting in North Carolina and finding a 4400 square foot home, furnishing the home, and entertaining your family in the home." (Bourne Aff. (DE 13) Ex. C). And, as noted above, defendant agreed to spend time with plaintiff in North Carolina. Therefore, the dispute arises out of defendant's contacts with North Carolina, which include partial performance of the alleged agreement.

Defendant argues that her contacts with North Carolina are not the genesis of the dispute because the putative contract was formed in California, even though the putative contract was partially performed in North Carolina. (Def. Mem. (DE 8–9). Defendant construes the court's minimum contacts analysis far too narrowly. Defendant's assertion of a breach of contract requires both formation of a contract and a breach of its terms. (See Bourne Aff. (DE 13) Ex. C). Where her contacts with the forum directly relate to her performance of the putative contract, defendant's argument is unavailing.

Finally, "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." Rudzewicz, 471 U.S. at 478 (internal citations omitted). Constitutional reasonableness depends upon factors including 1) "the burden on the defendant," 2) "the forum [s]tate's interest in adjudicating the dispute," 3) "plaintiff's interest in obtaining convenient and effective relief," 4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and 5) "the shared interest of the several [s]tates in furthering fundamental substantive social policies." World-Wide Volkswagen, 444 U.S. at 292 (internal citations omitted).

Here, the burden on defendant is not so gravely difficult as to put her at a severe disadvantage litigating in North Carolina. Defendant testifies that she now is the primary caregiver for her mother, who suffered a serious fall in March 2019. (McNealy Decl. (DE 7-1) ¶ 14). However, it is undisputed that defendant has previously traveled to North Carolina since her mother's fall. (Bourne Decl. (DE 13) ¶ 13; McNealy Decl. (DE 14-1) ¶ 14). Defendant suggests that she is indigent because she only makes $3,000.00 per month in income, but she does not testify fully to the extent of her assets. (See McNealy Decl. (DE 7-1) ¶ 14; McNealy Decl. (DE 14-1) ¶

15). Thus far, defense counsel has ably removed plaintiff's case to this court and fully litigated defendant's Rule 12(b) motion. (DE 1, 2, 3, 7, 8, 14). Plaintiff's counsel has also represented that he can travel to California to take depositions and otherwise minimize any inconvenience to defendant. (Pl. Resp. (DE 12) at 9). Where "modern transportation and communications have made it much less burdensome" for defendant to litigate the instant action, the burden of litigating the instant case in North Carolina does not put defendant at a severe disadvantage. Rudzewicz, 471 U.S. at 474.

After receiving two separate demands on April 19, 2019, and October 7, 2019, plaintiff chose to seek relief from the North Carolina courts, seeking declaratory judgment that he did not owe defendant compensation. (Bourne Aff. (DE 13) Ex. B, C). To date, defendant still has not filed claims seeking relief. (See Def. Mem. (DE 8) at 13 n.4). Thus, plaintiff's interest in obtaining convenient and effective relief, expressed through his choice to pursue declaratory judgment in North Carolina, militates in favor of constitutional reasonableness.

Finally, North Carolina has an interest in adjudicating the rights of the parties and efficiently disposing of the instant case. See Rudzewicz, 471 U.S. at 473. As discussed above, defendant seeks compensation from plaintiff, a citizen of North Carolina, for work partially performed in North Carolina. Therefore, North Carolina's interest in serving as the forum for the instant dispute weighs in favor of constitutional reasonableness. Weighing the World-Wide Volkswagen reasonableness factors in their entirety, specific jurisdiction over the instant dispute is constitutionally reasonable.

Where plaintiff has made the requisite showing of specific jurisdiction in the instant case, defendant's motion to dismiss for lack of personal jurisdiction is denied.

B.      Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981); see Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30–31 (1988); Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015).

Private interest factors include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 63 n.6 (2013) (quoting Piper Aircraft, 454 U.S. at 241 n. 6 (internal quotation marks omitted)). Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Id.

As noted above, plaintiff's choice of forum in North Carolina is entitled to a strong presumption in favor of retaining the case in this district. (See Compl. (DE 1-1)). The court rejects defendant's assertion that plaintiff's choice is entitled to less weight, where defendant knew for approximately six months of the possibility of litigation prior to commencement of plaintiff's declaratory judgment action, yet chose not to file her own lawsuit based on the claims she asserts.

Plaintiff resides in North Carolina, while defendant resides in California. Both parties have in the past indicated their ability to travel from California to North Carolina and vice-versa. Thus,

the convenience of the parties is a neutral factor.  See Bannister v. Wal-Mart Stores E., L.P., 843 F. Supp. 2d 610, 614 (E.D.N.C. 2012).

Defendant asserts that Carrie Leontis ("Leontis"), the parties' counselor, will testify to the contractual arrangement between the parties.  Leontis's home and office are located in Palo Alto, California.  The court is unable to subpoena Leontis to testify at trial.  See Fed. R. Civ. P. 45(c).  However, the Federal Rules permit defendant to rely upon Leontis's deposition testimony at trial.  See Fed. R. Civ. P. 32(a)(4)(D).  "Depositions are less satisfactory than live testimony."  Davis v. St. Paul-Mercury Indem. Co., 294 F.2d 641, 647 (4th Cir. 1961).  Nonetheless, "somewhat less weight" is given to inconvenience of witnesses if the party seeking transfer "does not explain why [the witnesses'] depositions would be inadequate or why they would not testify without a subpoena."  D2L Ltd. v. Blackboard, Inc., 671 F. Supp. 2d 768, 781 (D. Md. 2009); Samsung Elecs. Co. v. Rambus, Inc., 386 F. Supp. 2d 708, 718–19 (E.D. Va. 2005).  Here, defendant does not offer any evidence that process would be required for Leontis to testify, and she does not persuasively explain why deposing Leontis is insufficient in the instant case.  Thus, Leontis' convenience only weighs slightly in favor of transfer.

Defendant also asserts that her mother and daughter would be unable to testify in North Carolina.  However, defendant offers no indication as to what, if anything her mother and daughter would testify to.  And, as with Leontis, defendant fails to persuasively explain why deposition testimony is inadequate in the instant case.  Defendant also wholly ignores that plaintiff will present evidence in this case as well, and that such evidence is in North Carolina.

Turning to the public interest factors, the court rejects defendant's suggestion that docket congestion warrants transfer of this case.  As noted by plaintiff, the addition of a new colleague to the court's bench renders stale defendant's caseload statistics for this district.  Defendant's

suggestion that the court has not immediately benefitted from the presence of an additional district court judge is uninformed and unpersuasive. Moreover, the median time to trial is a poor measure of the court's ability to try a case quickly, where the timeline for each case is developed with input from the parties. Defendant offers no evidence that this case cannot be tried quickly if that is what the parties desire.

The instant dispute is a localized controversy, where plaintiff, a citizen of North Carolina, seeks to adjudicate his legal relationship with defendant, defendant seeks compensation for work partially performed in North Carolina, and where defendant ultimately would try to enforce a judgment against plaintiff in North Carolina. Thus, this factor weighs against transfer.

Finally, this case is a diversity case, seeking to determine plaintiff's rights in relation to defendant under state law. Defendant asserts that the parties have a contract that was formed in California, which in turn could require application of California law. See Morris v. Hockaday, 94 N.C. 286, 289 (1886) (holding that a claim for breach of contract is governed by the law of the state where the contract was allegedly formed, or the place of performance if stipulated to in the contract). This factor weighs in favor of transfer.

Weighing all the factors discussed above, the court concludes that defendant fails to overcome the strong presumption in favor of plaintiff's choice of forum. While some considerations such as availability of one key witness for live trial testimony and potential application of California law weigh in favor of transfer, such factors alone are not sufficient to warrant relief. The remaining factors presented by defendant are neutral or weigh against defendant, where defendant merely seeks to shift the convenience of litigating from plaintiff to her. By making demands of plaintiff and biding her time to file a lawsuit, defendant ceded the initiative in the instant case. She cannot now rely on § 1404(a) to reclaim it.

**CONCLUSION**

Based on the foregoing, defendant's motion to dismiss for lack of personal jurisdiction or in the alternative to transfer the case to the United States District Court for the Northern District of California (DE 7) is DENIED. The court's initial order regarding planning and scheduling will follow.

SO ORDERED, this the 27th day of March, 2020.

                                          LOUISE W. FLANAGAN
                                          United States District Judge